1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Vivek Kothari (Cal. Bar No. 262842)
vivek@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Christine Dumm, individually and on behalf of all others similarly situated, | Case No. 3:25-cv-07142 |
| *Plaintiff,* | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| Interactive Memories, Inc., d/b/a Mixbook | |
| *Defendant.* | |

**Table of Contents**

I.    Introduction.................................................................................................. 1

II.   Parties......................................................................................................... 3

III.  Jurisdiction and Venue................................................................................ 3

IV.   Facts........................................................................................................... 4

      A.    Defendant's fake sales and discounts. .......................................... 4

      B.    Defendant's advertisements are unfair, deceptive, and unlawful. ........... 12

      C.    Defendant's advertisements harm consumers.............................. 13

      D.    Plaintiff was misled by Defendant's misrepresentations. .................. 14

      E.    Defendant breached its contract with and warranties to Ms. Dumm and the
            putative class. ............................................................................ 15

      F.    No adequate remedy at law. ........................................................ 16

V.    Class Action Allegations........................................................................... 17

VI.   Claims....................................................................................................... 19

      First Cause of Action: Violation of California's False Advertising Law (FAL)................. 19

      Second Cause of Action: Violation of California's Consumer Legal Remedies Act
            (CLRA) ...................................................................................... 20

      Third Cause of Action: Violation of California's Unfair Competition Law ........................ 23

      Fourth Cause of Action: Breach of Contract ......................................... 25

      Fifth Cause of Action: Breach of Express Warranty ............................. 26

      Sixth Cause of Action: Quasi-Contract/Unjust Enrichment ................. 27

      Seventh Cause of Action: Negligent Misrepresentation......................... 27

      Eighth Cause of Action: Intentional Misrepresentation........................ 28

VII.  Relief........................................................................................................ 29

## I.    Introduction.

1.    Advertised "sale" prices are important to consumers.  Consumers are more likely to purchase an item if they know that they are getting a good deal.  Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else.

2.    While there is nothing wrong with a legitimate sale, a fake one—that is, one with made-up regular prices, made-up discounts, and made-up expirations—is deceptive and illegal.

3.    Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading.  Cal. Bus. & Prof. Code § 17500.  This includes statements falsely suggesting that a product is on sale, when it actually is not.

4.    Moreover, section 17501 of California's False Advertising Law provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising.  Cal. Bus. & Prof. Code § 17501.  So, in addition to generally prohibiting untrue and misleading fake discounts, it also specifically prohibits this particular flavor of fake discount (where the advertised former price is not the prevailing price during the specified timeframe).

5.    In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."  Cal. Civ. Code § 1770(a)(9), (13).

6.    Moreover, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price.  16 C.F.R. § 233.1.

7.    So, as numerous courts have found, fake sales violate these laws.  They also violate California's general prohibition on unlawful, unfair, and deceptive business practices.  *See* Cal. Bus. & Prof. Code § 17200.

8.      Defendant Interactive Memories, Inc. d/b/a Mixbook ("Mixbook" or "Defendant") sells and markets personalized photo books, calendars, cards, and home décor online through Defendant's website, www.mixbook.com.

9.      On its website, Defendant advertises discounts on everything or "almost everything" it sells (the "Mixbook Products" or "Products").[1] It lists purported regular prices and purported limited-time sales offering steep discounts—for example, "up to 50% off"—from those listed regular prices. Defendant advertises end dates to its sales —often coupled with "countdown clocks" purportedly marking the end of the sale period—to convey that its sales are limited-time and on the verge of ending. An example is shown below:



10.      Far from being time-limited, however, steep sitewide discounts on all of Defendant's Products are always available. As a result, everything about Defendant's price and purported discount advertising is false. The list prices Defendant advertises are not actually Defendant's regular prices, or the prevailing market value of Defendant's Products, because Defendant's Products are always available for less than that. The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all. Nor are the purported discounts limited time—quite the opposite, they are always available.

11.      As described in greater detail below, Ms. Dumm bought a Product from Defendant from its website, www.mixbook.com.  When Ms. Dumm made her purchases, Defendant advertised that sales were going on, and Defendant represented that the Product Ms. Dumm purchased was being offered at a steep discount from the purported regular prices that Defendant advertised.  And

---

[1] The following items are excluded from Defendant's sales on "almost everything": 6x6 photo books, all Softcover photobooks, and magnets.  These items excluded from Defendant's "almost everything" sales are not at issue in this case and are not part of the definition of "Mixbook Products" or "Products."

based on Defendant's representations, Ms. Dumm believed that she was purchasing a Product whose regular price and market value were the purported list prices that Defendant advertised, that she was receiving substantial discounts, and that the opportunity to get those discounts was time-limited.  These reasonable beliefs are what caused Ms. Dumm to buy from Defendant when she did.

12.     The representations Ms. Dumm relied on, however, were not true. The purported regular price was not the true regular price that Defendant sells the Product for, the purported discount was not the true discount, and the discount was ongoing—not time-limited.  Had Defendant been truthful, Ms. Dumm and other consumers like her would not have purchased the Products, or would have paid less for them.

13.     Plaintiff brings this case for herself and the other customers who purchased Mixbook Products during the relevant timeframe.

## II.     Parties

14.     Plaintiff Christine Dumm is domiciled in Los Angeles, CA.

15.     The proposed class includes citizens of every state.

16.     Defendant Interactive Memories, Inc. is a Delaware corporation with its principal place of business at 2000 Broadway Street, Redwood City, CA 94063.

## III.     Jurisdiction and Venue.

17.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

18.     The Court has personal jurisdiction over Defendant because Defendant's principal place of business is in this District and it sold Mixbook Products to consumers in California, including to Plaintiff.

19.     Venue is proper under 28 U.S.C. § 1391(b)(1) because Defendant resides in this District. Venue is proper under 28 U.S.C. § 1391(c)(2) because Defendant is subject to personal jurisdiction in this District. Venue is proper under 28 U.S.C. § 1391(d) because Defendant is subject to personal jurisdiction in this District with respect to this action, and would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant resides here

and sold Mixbook Products from this District.  Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District.

**IV.    Facts.**

    **A.    Defendant's fake sales and discounts.**

    20.    Defendant Mixbook manufactures, distributes, markets, and sells personalized photo books, calendars, cards, and home décor. Mixbook sells its Products directly to consumers online, through its website, www.mixbook.com.

    21.    On its website, Defendant creates the false impression that its Products' regular prices are higher than they truly are.

    22.    At any given time, on its website, Defendant advertises steep discounts on its Products. These advertisements offer significant discounts sitewide alongside a supposed end date of the discount. Reasonable consumers reasonably interpret Defendant's advertisements to mean that if they buy now, they will be getting a discount from the prices that Defendant usually charges for its Products. And it advertises these discounts extensively: on a banner on every webpage of its website (except for the pages on which a customer, after having chosen what Product they want to purchase, customizes the Product by uploading photos); in a large banner image on its homepage; on its product pages, the shopping cart, and during checkout. Example screenshots are provided on the following pages:



*Captured March 7, 2023[2]*

*Captured August 19, 2023*

---

[2] The Internet Archive's Wayback Machine identifies this screenshot as having been taken on March 7, 2023 even though the advertisement is listed as ending on March 6, 2023.

Class Action Complaint                 4               Case No. 3:25-cv-07142



*Captured March 14, 2024*



*Captured September 25, 2024*



*Captured October 22, 2024*



*Captured November 9, 2024*



*Captured July 3, 2025*



*Shopping Cart*

*Checkout*

23.     But immediately after each purportedly time-limited sale ends, Defendant continues to run the same discount, with a new expiration date.

24.     For example, on July 9, 2024, Defendant advertised a purportedly time-limited sale (up to 45% off) that "Ends: 07/10":

**Up to 45% Off + Free Shipping on $59+** Code **CREATEJULY** Ends: 07/10 <u>Details</u>    ( Apply )

25.    On July 11, 2024, however, Defendant advertised the same sale, this time one that supposedly "Ends: 07/15":

**Up to 45% Off + Free Shipping on $59+** Code **CREATEJULY** Ends: 07/15 Details    Apply

26.    The vast majority of the time, Defendant's homepage advertises "X% Off" or "Up to X% Off" sale that applies to all orders for Products, with no minimum purchase. A small minority of the time, the sitewide sales advertised on the home page require a minimum purchase, usually $49.  Here is an example:

45% off $179+, 40% off $99+ or 30% off $49+ See details | Ends: 07/28 | Code: YAYJULY    Apply

*Captured July 25, 2025*

27.    The list prices for Defendant's Products typically exceed the minimum purchase requirement on days that have one, meaning that even on days that include a minimum purchase requirement, the advertised discount always applies to the vast majority of Products Defendant sells—including the one Plaintiff bought.  Plus, given how steep the advertised discounts are, consumers who buy during these sales have a strong motivation to add items to their order in order to qualify for the discount.[3]  In addition, on those days, Defendant usually or always is also running *additional* promotions not advertised on the home page that apply to everything or "almost everything," with no minimum purchase requirement.  For example, on July 25, 2025—a day when the sale advertised on the homepage included a minimum purchase requirement of $49—Defendant was also offering the following promotion (described on the "Promo Terms" page at https://www.mixbook.com/promo/terms):

---

[3] For example, a customer who wishes to buy a product with a $40 list price would be better off adding a second product with a list price of $9 to the order to qualify for the 30% off discount, which would bring the total down to $34.30.

Class Action Complaint                          7                          Case No. 3:25-cv-07142

Promo code: **MXDLS25** | Expires 7/31

**50% Off Favorites:** This offer is only valid with coupon code MXDLS25. Enjoy 50% off 12X12" photo books, 14X11" calendars, premium cards, and all canvas prints. Receive 25% off almost everything else. This offer is not valid for 6X6" photo books and all Softcover photo books. This offer cannot be combined with other coupons, vouchers, Groupons, or applied after an order has been placed. Discount applies only to completed projects. No adjustments on previous purchases. Taxes will apply. Offer expires 7/31/2025 (11:59 pm PT).

**Semi Gloss, Signature Matte - Glossy Hardcover**
8x6 - 25%
11x8.5 - 25%
8.5x8.5 - 25%
10x10 - 25%
12x12 - 50%
14x11 - 25%

**Semi Gloss, Signature Matte - Matte Hardcover**
8x6 - 25%
11x8.5 - 25%
8.5x11 - 25%
8.5x8.5 - 25%
10x10 - 25%
12x12 - 50%
14x11 - 25%

**Premium Lustre Hardcover - Matte Hardcover**
8x6 - 25%
11x8.5 - 25%
8.5x11 - 25%
8.5x8.5 - 25%
10x10 - 25%
12x12 - 50%
14x11 - 25%

**Dust Jacket**
8x6 - 25%
11x8.5 - 25%
8.5x11 - 25%
8.5x8.5 - 25%
10x10 - 25%
12x12 - 50%
14x11 - 25%

**Signature Lay Flat (Matte and Lustre) - Matte Hardcover**
11x8.5 - 25%
8.5x11 - 25%
8.5x8.5 - 25%
10x10 - 25%
12x12 - 50%

**Premium Lay Flat (Matte and Lustre) - Matte Hardcover**
11x8.5 - 25%
8.5x11 - 25%
8.5x8.5 - 25%
10x10 - 25%
12x12 - 50%

**Calendars**
11x8.5 - 25%
12x12 - 25%
14x11 - 50%

**Cards**
All Satin Coated - 25%
All Signature Matte - 25%
Pearl Finish - 25%
All Premium - 50%
Cotton Texture - 25%
Luxe Board - 25%
Magnet - 0%

**Address Labels**
Address Labels - 25%
Labels - 25%
Envelopes - 25%

**Canvas Prints**
8x10 - 50%
11x14 - 50%
16x20 - 50%
20x30 - 50%
24x36 - 50%

**Metal Prints**
4x6 - 25%
5x7 - 25%
8x10 - 25%
14x11 - 25%
20x16 - 25%
30x20 - 25%
24x36 - 25%

**Acrylic Prints**
6x6 - 25%
11x14 - 25%
16x20 - 25%
20x30 - 25%

**Poster Prints**
11x14 - 25%
16x20 - 25%
20x30 - 25%
24x36 - 25%

28.    In addition, Defendant also always offers an introductory discount of "up to 50% off" a customer's first order. Here is an example:



29.     For all these reasons, even on days where the promotion advertised on the homepage requires a minimum purchase, all or nearly all of Defendant's Products—including ones with a list price below the minimum purchase threshold needed to qualify for the promotion advertised on the homepage—are subject to a significant discount.

30.     To confirm that Defendant always offers discounts off purported regular prices, Plaintiff's counsel performed an investigation of Defendant's advertising practices using the Internet Archive's Wayback Machine (available at www.archive.org).[4]  That investigation confirms that Defendant's sales are always available. Counsel collected 58 randomly selected screenshots of Defendant's website, www.mixbook.com, from the Internet Archive's Wayback Machine, from 2023-2025. Counsel also collected screenshots directly from Defendant's website in 2025 from 49 different days. A review of these screenshots confirmed that Defendant's sales have persisted continuously for years. On every single day for which counsel reviewed Defendant's website, Defendant advertised a sitewide discount.

31.     More specifically, the screenshots counsel collected show that Defendant was running a sitewide sale that applied to everything or "almost everything" (i.e., to all Products), with no minimum purchase, on 97 out of 107 days.

32.     On the remaining 10 days, the screenshot of the home page depicted a sitewide sale requiring a minimum purchase, and no "Promo Terms" page showing what other promotions were running at the time was available. For the reasons stated above, it is highly likely that, even on those days, the vast majority, if not all, of Defendant's Products were eligible for a promotion entitling the purchaser to a substantial discount off the supposed list prices.

33.     Reasonable consumers do not realize the fake nature of Defendant's promotions. That Defendant's sales are not real sales and instead persist indefinitely is not apparent from merely purchasing the Products, because the sale appears to be a bona fide sale. Consumers do not have any reason to go back to the website day after day to discover that there is still a sale. And, even a consumer who occasionally checks the website would reasonably believe that there happened to be

---

[4] The Internet Archive, available at archive.org, is a library that archives web pages. https://archive.org/about/.

another sale. Discovering Defendant's deception required extensive mining of internet archives, which revealed that the sale is not limited in time, that the discounts are fake, and that the advertised regular prices are fake.

34.    Some of Defendant's purported sales purport to require consumers to apply a coupon code to the order to get the discount. In at least some (and potentially all) cases, the codes are automatically applied to the order, meaning that everyone who buys during the purported sale received the discount. Regardless, the codes are advertised extensively throughout the website and purport to offer substantial savings, so—even in circumstances where the code must be applied, if any—the code is applied to substantially all or all orders placed on Defendant's website.

35.    In addition to advertising fake limited time sales, Defendant's website lists fake regular prices (that is, prices reflecting the list price or value of an item) and fake purported savings off those purported regular prices.

36.    For example, on August 20, 2025, Defendant advertised a purported limited-time sale of up to 55% off. As part of this sale, Defendant listed purported regular prices in smaller, black, strikethrough font along with the purported discounted price in larger, bold, orange font.  In this example, Defendant represented that a Square, 10x10, Matte Hardcover, Everyday Semi-Gloss, 30 page "Hardcover Photo Book" had a list price of ~~$85.89~~ and a discounted price of **$60.98** when the "EXTRAGIFT" code was applied:



**Hardcover Photo Book**
Square, 10×10, Matte Hardcover, Everyday Semi-Gloss, 30 pages
★★★★★ 4.9 (13)

~~$85.89~~  **$60.98**          You save **$24.91** with **EXTRAGIFT**

37.    But the truth is, the listed regular price of ~~$85.89~~ listed for that configuration of the "Hardcover Photo Book" is not its regular price. Instead, the true regular price is much lower, because Defendant always offers steep sitewide discounts on it. As a result, Defendant's customers who bought that Product did not receive $24.91 off. They received a much lower discount, or no discount at all.

38.     Using these tactics, Defendant leads reasonable consumers to believe that they will get a discount on the Products they are purchasing if they purchase during the limited-time promotion. In other words, it leads reasonable consumers to believe that if they buy now, they will get a Product worth X at a discounted, lower price Y. This creates a sense of urgency: buy now, and you will receive something worth more than you pay for it; wait, and you will pay more for the same thing later.

39.     Based on Defendant's advertisements, reasonable consumers reasonably believe that the list prices Defendant advertises are Defendant's regular prices and former prices (that is, the price at which the goods were actually offered for sale on Defendant's website before the limited-time offer went into effect). In other words, reasonable consumers reasonably believe that the list prices Defendant advertises represent the amount that consumers formerly had to pay on Defendant's website for Defendant's goods, before the limited-time sale began, and will again have to pay for Defendant's goods when the sale ends.  Said differently, reasonable consumers reasonably believe that, prior to the supposedly time-limited sale, consumers buying from Defendant on its website had to pay the list price to get the item and did not have the opportunity to get a discount from that list price.

40.     Reasonable consumers also reasonably believe that the list prices Defendant advertises represent the true market value of the Products, and are the prevailing prices for those Products; and that they are receiving reductions from those listed regular prices in the amounts advertised. In truth, however, Defendant always offers discounts off the purported regular prices it advertises. As a result, everything about Defendant's price and purported discount advertising is false. The list prices Defendant advertises are not actually Defendant's regular or former prices, or the prevailing prices for the Products Defendant sells.  And, the list prices do not represent the true market value for the Products, because Defendant's Products are always available for less than that on Defendant's website, and customers did not have to formerly pay that amount to get those items. The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all. Nor are the purported discounts limited-time—quite the opposite, they are always available.

41.     Defendant's purported regular prices were not the prevailing prices during the 90 days immediately preceding Defendant's advertisement of the purported discounts. As explained and shown above, Mixbook always offers discounts on its Products. As a result, for any 90-day period, the most common, and prevailing, price of those Products are the supposedly discounted prices that are always available on Defendant's website, not the advertised list or regular prices.

**B.     Defendant's advertisements are unfair, deceptive, and unlawful.**

42.     Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

43.     Moreover, section 17501 of California's False Advertising Law specifically provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising.  Cal. Bus. & Prof. Code § 17501.

44.     In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

45.     In addition, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price.  16 C.F.R. § 233.1.

46.     And finally, California's unfair competition law bans unlawful, unfair, and deceptive business practices. See Cal. Bus. & Prof. Code § 17200.

47.     Here, as described in detail above, Defendant makes untrue and misleading statements about its prices and supposed discounts. Defendant advertises regular prices that are not its true regular prices, or its former prices, and were not the prevailing market price in the three months immediately preceding the advertisement.  In addition, Defendant advertised goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices and/or market values without the intent to sell goods having those former

prices and/or market values. Defendant made false or misleading statements of fact concerning the reasons for, existence of, and amounts of price reductions, including the existence of steep discounts, and the amounts of price reductions resulting from those discounts. And Defendant engaged in unlawful, unfair, and deceptive business practices.

## C. Defendant's advertisements harm consumers.

48.     Based on Defendant's advertisements, reasonable consumers would expect that the list prices Defendant advertises are the regular prices at which Defendant usually sells its Products, that these are former prices that Defendant sold its Products at before the time-limited discount was introduced, and that they are the prevailing market prices for the Products.

49.     Reasonable consumers would also expect that, if they purchase during the sale, they will receive an item whose regular price and/or market value is the advertised list price and that they will receive the advertised discount from the regular purchase price.

50.     In addition, consumers are more likely to buy the product if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount.

51.     Consumers that are presented with discounts are substantially more likely to make the purchase. "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[5]  And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[6]

52.     Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[7]

---

[5] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.
[6] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).
[7] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).

53.    Thus, Defendant's false advertising harms consumers by depriving them of their reasonable expectations.  Defendant's advertisements harm consumers by inducing them to make purchases based on false information. In addition, by this same mechanism, Defendant's advertisements artificially increase consumer demand for Defendant's Products.  This puts upward pressure on the prices that Defendant can charge for its Products. As a result, Defendant can charge a price premium for its Products, that it would not be able to charge absent the misrepresentations described above. So, due to Defendant's misrepresentations, Plaintiff and the Class paid more for the Products they bought than they otherwise would have.

**D.    Plaintiff was misled by Defendant's misrepresentations.**

54.    On or around March 23, 2023, Ms. Dumm purchased a "10x10 Deluxe Square Matte Hardcover Photo Book" from Defendant's website, www.mixbook.com.  She made this purchase while living in Los Angeles, CA. At the time she made her purchase, Defendant's home page was advertising a supposedly time-limited sitewide sale offering "45% off 159, 40 percent off 99+, and 35% off 59+."  Defendant's website was also advertising that the list price for the Product Ms. Dumm purchased—a 10x10 Deluxe Square Matte Hardcover Photo Book—was $77.42 for the configuration Ms. Dumm purchased.  The website also advertised that that Product was being offered for a discounted price of $48.00, with savings of $29.42.

55.    Ms. Dumm read and relied on Defendant's representations on the website described above, specifically that the Product had the regular price listed above and was being offered at a discount for a limited time. For example, when making her purchase, Ms. Dumm read and relied on Defendant's representations that the "10x10 Deluxe Square Matte Hardcover Photo Book" Ms. Dumm purchased had a regular price of "$77.42" and that she was receiving a discount of $29.42. She also relied on Defendant's representations that the sale was time-limited and expiring soon. Based on Defendant's representations described and shown above, Ms. Dumm reasonably understood that Defendant regularly (and before the promotion Defendant was advertising) sold the Product she was purchasing at the published regular price, that this regular price was the market value of the Product that she was buying, that she was receiving the advertised discount as compared to the regular price, and that advertised discount was only available for a limited time

(during the limited-time promotion). She would not have made the purchase if she had known that the Product was not discounted as advertised, and that she was not receiving the advertised discount.

56.     In the order confirmation that Defendant sent to Ms. Dumm after she made her purchase, Defendant represented that the "10x10 Deluxe Square Matte Hardcover Photo Book" had a regular price of $77.42 and that Ms. Dumm was receiving a substantial discount off those regular prices.

57.     In reality, as explained above, Defendant's Products, including the Product that Ms. Dumm purchased, were always available at a discounted price off the purported regular prices. In other words, Defendant did not regularly (or ever) sell the Product Ms. Dumm purchased at the purported regular price, and the Product was not discounted as advertised. Plus, the sale was not time-limited—the Product Ms. Dumm purchased is always on sale.

58.     Plaintiff faces an imminent threat of future harm.  Plaintiff would purchase Products from Defendant again in the future if she could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful.  But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive.  For example, while she could watch Defendant's website for a sale on the day that it is supposed to end to see if the sale is permanent, doing so could result in her missing out on the sale (e.g., if the sale is actually limited in time, and not permanent).  Accordingly, Plaintiff is unable to rely on Defendant's advertising in the future, and so cannot purchase Products she would like to purchase

**E.     Defendant breached its contract with and warranties to Ms. Dumm and the putative class.**

59.     When Ms. Dumm, and other members of the putative class, purchased and paid for the Mixbook Products that they bought as described above, they accepted offers that Defendant made, and thus, a contract was formed each time that they made purchases.  Each offer was to provide Products having a particular listed regular price and market value, and to provide those Products at the discounted price advertised on the website.

60.     Defendant's website and email confirmations list the market value of the items that Defendant promised to provide (shown above for Ms. Dumm). Defendant agreed to provide a discount equal to the difference between the regular prices, and the prices paid by Ms. Dumm and putative class members (also shown above for Ms. Dumm).  For example, Defendant offered to provide Ms. Dumm (among other things) the "10x10 Deluxe Square Matte Hardcover Photo Book" with a market value of $77.42, and to provide the advertised discount.  Defendant also warranted that the regular price and market value of the Product Ms. Dumm purchased was the advertised list price and warranted that Ms. Dumm was receiving the specified discount on the Product.

61.     The regular price and market value of the items Ms. Dumm and putative class members would receive, and the amount of the discount they would be provided off the regular price of those items, were specific and material terms of the contract. They were also affirmations of fact about the Products and a promise relating to the goods.

62.     Ms. Dumm and other members of the putative class performed their obligations under the contract by paying for the items they purchased.

63.     Defendant breached its contract by failing to provide Ms. Dumm and other members of the putative class with Products that have a regular price and market value equal to the regular price displayed, and by failing to provide the discount it promised. Defendants also breached warranties for the same reasons.

**F.     No adequate remedy at law.**

64.     Plaintiff seeks damages and, in the alternative, restitution. Plaintiff is permitted to seek equitable remedies in the alternative because she has no adequate remedy at law.

65.     A legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims. For example, Plaintiff's FAL claim under Section 17501 (an equitable claim) is predicated on a specific statutory provision, which prohibits advertising merchandise using a former price if that price was not the prevailing market price within the past three months. Cal. Bus. & Prof. Code § 17501. Plaintiff may be able to prove these more straightforward factual

elements, and thus prevail under the FAL, while not being able to prove one or more elements of her legal claims.

66.    In addition, to obtain a full refund as damages, Plaintiff must show that the Product she bought has essentially no market value. In contrast, Plaintiff can seek restitution without making this showing. This is because Plaintiff purchased a Product that she would not otherwise have purchased, but for Defendant's representations. Obtaining a full refund at law is less certain than obtaining a refund in equity.

67.    Furthermore, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

68.    Finally, legal damages are inadequate to remedy the imminent threat of future harm that Plaintiff faces. Only an injunction can remedy this threat of future harm. Plaintiff would purchase or consider purchasing Products from Defendant again in the future if she could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful. But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive. Thus, she is unable to rely on Defendant's advertising in the future, and so cannot purchase Products she would like to purchase

**V.    Class Action Allegations.**

69.    Plaintiff brings the asserted claims on behalf of the proposed Class or, in the alternative, on behalf of the proposed California Subclass:

- <u>Class</u>: All persons nationwide who, within the applicable statute of limitations period, purchased one or more Mixbook Products advertised at a discount on Defendant's website (the "Class").

- <u>California Subclass</u>: All such persons who resided in California when they made their purchases (the "Subclass").

70.    The following people are excluded from the proposed class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant,

Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

### Numerosity

71.    The proposed class contains members so numerous that separate joinder of each member of the class is impractical. There are tens or hundreds of thousands of class and subclass members.

### Predominance of Common Questions

72.    There are questions of law and fact common to the proposed class.  Common questions of law and fact include, without limitation:

(1) whether Defendant made false or misleading statements of fact in its advertisements;

(2) whether Defendant violated California's consumer protection statutes;

(3) whether Defendant committed a breach of contract;

(4) whether Defendant committed a breach of an express or implied warranty;

(5) damages needed to reasonably compensate Plaintiff and the proposed class.

### Typicality & Adequacy

73.    Plaintiff's claims are typical of the proposed Class.  Like the proposed Class, Plaintiff purchased Mixbook Products advertised at a discount on Defendant's website.  There are no conflicts of interest between Plaintiff and the Class.

### Superiority

74.    A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of hundreds of thousands or millions of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

1   **VI.    Claims.**

2                                 <u>First Cause of Action:</u>

3                   **Violation of California's False Advertising Law (FAL)**

4         **(By Plaintiff and the Class, or alternatively, the California Subclass)**

5           75.     Plaintiff incorporates each and every factual allegation set forth above.

6           76.     Plaintiff brings this cause of action on behalf of herself and the Class. In the

7   alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

8           77.     Defendant has violated sections 17500 and 17501 of the Business and Professions

9   Code.

10          78.     Defendant has violated, and continues to violate, section 17500 of the Business and

11  Professions Code by disseminating untrue and misleading advertisements to Plaintiff and Class

12  members.

13          79.     As alleged more fully above, Defendant advertises former prices along with

14  discounts. Defendant does this, for example, by crossing out a higher price (*e.g.*, ~~$85.89~~) and

15  displaying it next to a lower, discounted price. Reasonable consumers would understand prices

16  advertised in strikethrough font from which time-limited discounts are calculated to denote

17  "former" prices, i.e., the prices that Defendant charged before the time-limited discount went into

18  effect.

19          80.     The prices advertised by Defendant are not Defendant's regular prices. In fact, those

20  prices are never Defendant's regular prices (i.e., the price you usually have to pay to get the Product

21  in question), because there is always a heavily-advertised ongoing promotion entitling consumers to

22  a discount. Moreover, for the same reasons, those prices were not the former prices of the Products.

23  Accordingly, Defendant's statements about the former prices of its Products, and its statements

24  about its discounts from those former prices, were untrue and misleading. In addition, Defendant's

25  statements that its discounts "end" on a particular date and/or time are false and misleading.

26          81.     In addition, Defendant has violated, and continues to violate, section 17501 of the

27  Business and Professions Code by advertising former prices that were not the prevailing market

28  price within three months next immediately preceding the advertising.  As explained above,

Class Action Complaint                        19                     Case No. 3:25-cv-07142

Defendant's advertised regular prices, which reasonable consumers would understand to denote former prices, were not the prevailing market prices for the Products within three months preceding publication of the advertisement.  And Defendant's former price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed. Defendant's advertisements do not indicate whether or when the purported former prices were offered at all.

82.     Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing the Mixbook Product. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

83.     In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Mixbook Products.

84.     Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Class.

85.     Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the truth, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

86.     For the claims under California's False Advertising Law, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

## **Second Cause of Action:**

### **Violation of California's Consumer Legal Remedies Act (CLRA)**

### **(By Plaintiff and the Class, or alternatively, the California Subclass)**

87.     Plaintiff incorporates each and every factual allegation set forth above.

88.     Plaintiff brings this cause of action on behalf of herself and the Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

89.     Plaintiff and the Class are "consumers," as the term is defined by California Civil Code § 1761(d).

90.     Plaintiff and the Class have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

91.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

92.     As alleged more fully above, Defendant made and disseminated untrue and misleading statements of facts in its advertisements to Class members.  Defendant did this by using fake regular prices, i.e., regular prices that are not the prevailing prices, and by advertising fake discounts.

93.     Defendant violated, and continues to violate, section 1770 of the California Civil Code.

94.     Defendant violated, and continues to violate, section 1770(a)(5) of the California Civil Code by representing that Products offered for sale have characteristics or benefits that they do not have.  Defendant represents that the value of its Products is greater than it actually is by advertising inflated regular prices and fake discounts for Products.

95.     Defendant violated, and continues to violate, section 1770(a)(9) of the California Civil Code.  Defendant violates this by advertising its Products as being offered at a discount, when in fact Defendant does not intend to sell the Products at a discount.

96.     And Defendant violated, and continues to violate section 1770(a)(13) by making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions on its website, including by (1) misrepresenting the regular price of Products on its website, (2) advertising discounts and savings that are exaggerated or nonexistent, (3) misrepresenting that the discounts and savings are unusually large, when in fact they are regularly available, and (4) misrepresenting that the discounts will end soon when in fact they do not end.

97.     Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

98.     Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Mixbook Products.  Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

99.     In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Mixbook Products.

100.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Class.

101.    Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

102.    Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiff, on behalf of herself and all other members of the Class, seeks injunctive relief.

103.    Under California Civil Code § 1780(a)(2), Plaintiff, on behalf of herself and the Class, seeks injunctive relief. As addressed next, Plaintiff is not seeking any monetary relief, under the CLRA, until the notice period elapses.

104.    CLRA § 1782 NOTICE.  On August 8, 2025, a CLRA demand letter was sent to Defendant's principal place of business and to its registered agent via certified mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. If Defendant does not fully correct the problem for Plaintiff and for each member of the Class within 30 days of receipt, Plaintiff and the Class will seek all monetary relief allowed under the CLRA.

105.    A CLRA venue declaration is attached.

## **Third Cause of Action:**

### **Violation of California's Unfair Competition Law**

### **(By Plaintiff and the Class, or alternatively, the California Subclass)**

106.    Plaintiff incorporates each and every factual allegation set forth above.

107.    Plaintiff brings this cause of action on behalf of herself and the Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

108.    Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

### *The Unlawful Prong*

109.    Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here. In addition, Defendant engaged in unlawful conduct by violating the FTCA. The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" and prohibits the dissemination of false advertisements. 15 U.S.C. § 45(a)(1), 15 USC § 52(a). As the FTC's regulations make clear, Defendant's false pricing schemes violate the FTCA. 16 C.F.R. § 233.1.

### *The Deceptive Prong*

110.    As alleged in detail above, Defendant's representations that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts were false and misleading.

111.    Defendant's representations were misleading to Plaintiff and other reasonable consumers.

112.    Plaintiff relied upon Defendant's misleading representations and omissions, as detailed above.

### *The Unfair Prong*

113.    As alleged in detail above, Defendant committed "unfair" acts by falsely advertising that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts.

114.    Defendant violated established public policy by violating the CLRA and FAL, as alleged above and incorporated here. The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA and FAL).

115.    The harm to Plaintiff and the Class greatly outweighs the public utility of Defendant's conduct. There is no public utility to misrepresenting the price of a consumer product. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumer products only injure healthy competition and harm consumers.

116.    Plaintiff and the Class could not have reasonably avoided this injury. As alleged above, Defendant's representations were deceptive to reasonable consumers like Plaintiff.

117.    Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

* * *

118.    For all prongs, Defendant's representations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Mixbook Products. Defendant's representations were a substantial factor in Plaintiff's purchase decision.

119.    In addition, class-wide reliance can be inferred because Defendant's representations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Mixbook Products.

120.    Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Class members.

121.    Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

122.    For the claims under California's Unfair Competition Law, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a

full refund and/or measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

**Fourth Cause of Action:**

**Breach of Contract**

**(By Plaintiff and the Class, or alternatively, the California Subclass)**

123.    Plaintiff incorporates each and every factual allegation set forth above.

124.    Plaintiff brings this cause of action on behalf of herself and the Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

125.    Plaintiff and Class members entered into contracts with Mixbook when they placed orders to purchase Products on Defendant's website.

126.    The contracts provided that Plaintiff and Class members would pay Mixbook for the Products ordered.

127.    The contracts further required that Mixbook provide Plaintiff and Class members with Products that have a market value equal to the regular prices displayed on the website.  They also required that Mixbook provides Plaintiff and the Class members with the discount advertised on the website and listed in the receipt.  These were specific and material terms of the contract.

128.    The specific discounts were a specific and material term of each contract, and were displayed to Plaintiff and Class members at the time they placed their orders.

129.    Plaintiff and Class members paid Mixbook for the Products they ordered, and satisfied all other conditions of their contracts.

130.    Mixbook breached the contracts with Plaintiff and Class members by failing to provide Products that had a prevailing market value equal to the regular price displayed on its website, and by failing to provide the promised discount. Mixbook did not provide the discount that Mixbook had promised.

131.    Plaintiff provided Defendant with notice of the breach, by mailing notice letters to Defendant's principal place of business and registered agent on August 8, 2025.

132.    As a direct and proximate result of Defendant's breaches, Plaintiff and Class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

133.    For the breach of contract claims, Plaintiff seeks all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

### Fifth Cause of Action:

### Breach of Express Warranty

### (By Plaintiff and the Class, or alternatively, the California Subclass)

134.    Plaintiff incorporates each and every factual allegation set forth above.

135.    Plaintiff brings this cause of action on behalf of herself and the Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

136.    Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of Mixbook Products, issued material, written warranties by advertising that the Products had a prevailing market value equal to the regular price displayed on Defendant's website.  This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

137.    This warranty was part of the basis of the bargain and Plaintiff and members of the Class relied on this warranty.

138.    In fact, Mixbook Products' stated market value was not the prevailing market value. Thus, the warranty was breached.

139.    Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's registered agent and to Defendant's principal place of business on August 8, 2025.

140.    Plaintiff and the Class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Products if they had known that the warranty was false, (b) they overpaid for the

Products because the Products were sold at a price premium due to the warranty, and/or (c) they did not receive the Products as warranted that they were promised.

141.    For their breach of express warranty claims, Plaintiff seeks all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

## Sixth Cause of Action:

### Quasi-Contract/Unjust Enrichment

**(By Plaintiff and the Class, or alternatively, the California Subclass)**

142.    Plaintiff incorporates each and every factual allegation set forth above.

143.    Plaintiff brings this cause of action in the alternative to the Breach of Contract and Breach of Warranty claims (Counts Four and Five) on behalf of herself and the Class. In the alternative, Plaintiff brings this claim on behalf of herself and the California Subclass.

144.    As alleged in detail above, Defendant's false and misleading advertising caused Plaintiff and the Class to purchase Mixbook Products and to pay a price premium for these Products.

145.    In this way, Defendant received a direct and unjust benefit, at Plaintiff's expense.

146.    (In the alternative only), due to Defendant's misrepresentations, its contracts with Plaintiff and other Class members are void or voidable.

147.    Plaintiff and the Class seek restitution, and in the alternative, rescission.

148.    For the quasi-contract/unjust enrichment claims, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

## Seventh Cause of Action:

### Negligent Misrepresentation

**(By Plaintiff and the Class, or alternatively, the California Subclass)**

149.    Plaintiff incorporates each and every factual allegation set forth above.

150.    Plaintiff brings this cause of action on behalf of herself and the Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

151.    As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and Class members concerning the existence and/or nature of the discounts and savings advertised on its website.

152.    These representations were false.

153.    When Defendant made these misrepresentations, it knew or should have known that they were false. Defendant had no reasonable grounds for believing that these representations were true when made.

154.    Defendant intended that Plaintiff and Class members rely on these representations and Plaintiff and Class members read and reasonably relied on them.

155.    In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Mixbook Products.

156.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class members.

157.    Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and /or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

158.    For the negligent misrepresentation claims, Plaintiff seeks all damages available including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

**Eighth Cause of Action:**

**Intentional Misrepresentation**

**(By Plaintiff and the Class, or alternatively, the California Subclass)**

159.    Plaintiff incorporates each and every factual allegation set forth above.

160.    Plaintiff brings this cause of action on behalf of herself and the Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

161.    As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and Class members concerning the existence and/or nature of the discounts and savings advertised on its website.

162.    These representations were false.

163.    When Defendant made these misrepresentations, it knew that they were false at the time that they made them and/or acted recklessly in making the misrepresentations.

164.    Defendant intended that Plaintiff and Class members rely on these representations and Plaintiff and Class members read and reasonably relied on them.

165.    In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Mixbook Products.

166.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class members.

167.    Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and /or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

168.    For the intentional misrepresentation claims, Plaintiff seeks all damages available including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the Class as a result of Defendant's unlawful conduct.

## VII.    Relief.

169.    Plaintiff seeks the following relief for herself and the Class and Subclass:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed Class and Subclass;
- Damages, treble damages, and punitive damages where applicable;

- Restitution;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law; and
- Any additional relief that the Court deems reasonable and just.

**<u>Demand For Jury Trial</u>**

170.    Plaintiff demands the right to a jury trial on all claims so triable.

Dated: August 22, 2025

Respectfully submitted,

By: */s/ Vivek Kothari*

Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Vivek Kothari (Cal. Bar No. 262842)
vivek@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorney for Plaintiff*